**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **STEPHANIE AUSTIN,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 13 C 7257** |
| | ) | |
| **v.** | ) | **Judge Ronald A. Guzmán** |
| | ) | |
| **CAROLYN COLVIN, Acting** | ) | |
| **Commissioner of Social Security** | ) | |
| **Administration,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Stephanie Austin seeks judicial review of a final decision of the Commissioner of Social

Security that she is not entitled to supplemental security income ("SSI") and disability insurance

benefits ("DIB") under the Social Security Act as amended. 42 U.S.C. §§ 423(a), 1381a. Both

parties move for summary judgment. For the reasons stated below, Plaintiff's motion is granted

and the government's motion is denied. The case is remanded to the Social Security

Administration for proceedings consistent with this order.

**I.       Facts**

Plaintiff filed her applications for DIB and SSI on June 1, 2010, alleging disability

beginning January 1, 2009. (AR 26.)[1] Her applications were denied initially, upon

reconsideration, and following a hearing by an administrative law judge ("ALJ"). (*Id*. 79, 81,

26-40.). The Appeals Council denied review, making the ALJ's decision the final decision of

the Commissioner. (*Id*. 6-8.)

Plaintiff was 29 years old at the time of the ALJ's decision. (*Id*. 40, 81.) According to

---

[1] Citations to "AR" refer to the administrative record in this case.

the ALJ, Plaintiff has the following severe impairments:  Ehler's-Danlos Syndrome ("EDS")[2];

osteopenia[3]; and celiac sprue.[4]  (*Id*. 28.)  She has had chronic joint pain with major

reconstruction for the ankles, with a history of multiple joint dislocations.  (*Id*.)  According to the

ALJ, Plaintiff's impairments did not meet or medically equal the severity of one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id*. 30.)  The ALJ further concluded

that while Plaintiff could not perform any past relevant work as a physical therapy aid,

considering Plaintiff's age, education, work experience, and residual functional capacity, there

are jobs that exist in significant numbers in the national economy that Plaintiff could perform.

(*Id*. 40.)

## II.     Analysis

### A.     Relevant Law

The Social Security Act, 42 U.S.C. § 405(g), authorizes judicial review of the

Commissioner's final decision to determine "whether the record as a whole contains substantial

evidence" to support that decision and whether the Commissioner committed an error of law.

*Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984).  Substantial evidence is "such

evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971).  Although a claimant has the burden to prove disability, the

---

[2]  According to the Ehlers-Danos National Foundation, EDS "is a heterogeneous group of heritable connective tissue disorders, characterized by articular (joint) hypermobility, skin extensibility and tissue fragility."  *See* http://ednf.org/what-eds.

[3]  "Osteopenia refers to bone density that is lower than normal peak density but not low enough to be classified as osteoporosis."  *See* http://www.webmd.com/osteoporosis/tc/osteopenia-overview

[4]  Celiac sprue is also known as celiac disease.  *See* http://www.emedicinehealth.com/celiac_sprue/article_em.htm

ALJ has a duty to develop a full and fair record. *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). The Court reviews the ALJ's decision *de novo* but gives deference to any factual findings. *Prochaska v. Barnhart*, 454 F.3d 731, 734 (7th Cir. 2006).

The Social Security regulations set forth a five-step sequential evaluation process for the ALJ's determination of whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4). The ALJ must determine: (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant's alleged impairment or combination of impairments is severe; (3) whether any of the claimant's impairments meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) whether the claimant is unable to perform his past relevant work; and (5) whether the claimant is unable to perform any other work existing in significant numbers in the national economy. *Id.* A finding of disability requires an affirmative answer at either step three or step five, while a negative finding at any step other than step three precludes a finding of disability. *Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008).

Plaintiff claims that the ALJ made an improper credibility determination regarding Plaintiff's reports of pain. (AR 32.) The Court will overturn a credibility finding only if it is "patently wrong." *Prochaska,* 454 F.3d at 738. Credibility determinations are governed by SSR 96–7p, which requires the ALJ to evaluate, in light of all of the evidence, "the intensity, persistence and functionally limiting effects" of a claimant's symptoms and the extent to which they affect her ability to work. SSR 96–7p, 1996 WL 374186, at *1–2 (S.S.A. July 2, 1996). "Although a claimant can establish the severity of [her] symptoms by [her] own testimony; [her] subjective complaints need not be accepted insofar as they clash with other, objective medical

evidence in the record." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007).

As an initial matter, the ALJ stated that:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(AR 98.) The Seventh Circuit has referred to this same language as "meaningless boilerplate" and strongly criticized its use, noting that the government's lawyer admitted at oral argument that he did not know what it meant, and suggested that the Social Security Administration "take a close look at the utility and intelligibility of its 'templates.'" *Bjornson v. Astrue*, 671 F.3d 640, 644–45 (7th Cir. 2012).

In any event, the Seventh Circuit's criticism goes to the use of the boilerplate language in place of a credibility determination based on the record evidence. *Richison v. Astrue*, 462 Fed. Appx. 622, 625 (7th Cir. 2012) ("We have derided this sort of boilerplate as inadequate, *by itself*, to support a credibility finding.") (emphasis added). The ALJ noted that Plaintiff testified at the hearing that she was in significant pain, could not lift her then-infant son or a gallon of milk, did not cook or perform other household chores and relied on her husband (from whom she was recently separated), family members, and neighbors to assist her in taking care of her children and household tasks. (AR 31.) The ALJ also noted that Plaintiff testified that the "slightest cough" causes her pain, she "regularly undergoes chiropractic care that provides only brief relief" from the pain, muscle relaxants also provide some relief, she does not take any prescription pain medication "because she finds that pain to be a useful indicator of when she is overtaxing her joints," and that she lies down for about 80% of the day. (*Id*. 32.)

However, the ALJ stated that "the objective medical evidence does not fully support and is inconsistent with the claimant's subjective complaints [of pain]." (*Id.*) She then went through a recitation of Plaintiff's medical history including that:

- her March 2009 follow-up after surgery on her ankles showed an "excellent" result and that pain she had reported during the March follow-up stemming from plantar fasciitis had improved by April 2009 with ice massage, reporting a pain level from that condition as 0 on a scale of 1 (least severe) to 10;

- at the April 2009 appointment, the pain from the exostosis of the Evans calcaneal osteotomy on the left foot was manageable if she wore loose-fitting shoes;

- Progress notes dated July 26, 2010 indicated that claimant was in no acute distress and ambulated without difficulty;

- a September 2010 musculoskeletal examination was within "normal limits," except for hyperextensible joints; and

- during a mental status exam on October 6, 2010, there were no observed problems in the claimant's "ambulation, balance, or posture."

(*Id.* 32-35.)

Nevertheless, the ALJ's decision further notes that:

- a June 10, 2009 examination indicated that certain of Plaintiff's joints exhibited hypermobility times four, her fingers and thumbs were hyperextended and elbows and shoulders went beyond normal anatomic barriers for range of motion, her feet were flat with dropped arches and bilateral ankle weakness, and that the range of motion testing led to pain that was within normal limits;

- joint inspection "revealed no misalignment, asymmetry, crepitation, defects, or effusions except as noted in the knees," and "stability in the lower extremities was normal" but pain in the rib cage existed at insertion sites, with similar results during examinations on January 11, 2010 and July 1, 2010, including that the "range of motion testing of most joints caused pain," that the rib cage is painful at insertion sites on sternum and posterior along spine" and that she had "free floating ribs also with reproducible pain on palpation."

(*Id*. 33.)

In addition, the ALJ referred to an October 27, 2010 examination in which:

- Plaintiff "presented for an initial examination and evaluation with complaints of dull, aching and spastic pain in the neck and upper back, bilaterally" and that Plaintiff "also described sharp and throbbing occipital headaches, occurring all the time when she is awake";

- her walk "revealed no antalgic gait," Plaintiff was "noted to be hypermobile and all cervical, thoracic, and lumbar spines were above normal limits," that "[p]alpation of the left suboccipital muscle group of the neck demonstrated active trigger points" and the "right suboccipital muscle group of the neck revealed severe pain";

- the "midline structures of the paracervical muscles disclosed severe muscle spasms," "palpations of the left upper thoracic group of the dorsum disclosed moderate pain," the "upper thoracic midline strictures of the dorsum demonstrated inflammation" and that the "right upper thoracic group of the dorsum revealed hypertonicity."

(*Id*. 34.)

The ALJ concluded that "while the claimant undoubtedly may experience some pain, limitations, and restrictions from her impairments, the medical record in its entirety demonstrates that the claimant has no greater limitations in her ability to perform work activities than those reflected in the residual functional capacity reached in this decision." (*Id*. 38.)

The Court, however, is troubled by the ALJ's lack of discussion of the effect of EDS on Plaintiff and her complaints of pain. Indeed, other than identifying it as a severe impairment from which Plaintiff suffered, the ALJ barely mentions it again, but does note that Plaintiff has had chronic joint pain with major reconstruction of the ankles with a history of multiple joint dislocations. The ALJ failed to refer to the December 1, 2009 report from Children's Memorial Hospital, Division of Genetics, Birth Defects and Metabolism, to whom Plaintiff was referred by

6

her treating physician, Dr. Susan Fedinec, after Plaintiff was diagnosed with EDS.  (*Id*. 314.)

The report summarized Plaintiff's "History of Present Illness" as follows:

> Ms. Austin reports a history of chronic joint subluxations[5] and dislocations
> involving her jaw and shoulder along with bilateral ankle reconstruction that
> required scar revision.  Ms. Austin also reports significant musculoskeletal pain
> and has been seeing a naprapath, Dr. Dawn Olson, for myofascial release.  She
> takes over the counter pain killers when needed and has never had evaluation at a
> pain clinic.  She was referred for evaluation in the Dept. of Rheumatology at
> Northwestern Memorial Hospital where the diagnosis of EDS was made with
> recommendations for cardiac evaluation . . . and pain management.  Ms. Austin is
> seeking further genetic counseling related to her diagnosis and implications for
> her daughter who was also evaluated at today's clinic appointment.

(*Id*. 315.)  The report later states that:

> This type of EDS [hypermobility type] is typically characterized chiefly by joint
> laxity but can have involvement of other organs, . . . along with the findings of
> soft skin and easy bruising.  We discussed that subluxations and joint dislocations
> are common, along with the potential for chronic pain that can be quite disabling.

(*Id*. 317.)  While the ALJ discusses physician notes which state that a musculoskeletal

examination was within "normal limits," there is no indication as to what this means.  More

importantly, these same notes acknowledge Plaintiff's hypermobility, but make no reference to

EDS or whether it could be the cause of disabling pain.  According to the Ehlers-Danlos

National Foundation ("EDNF"):

> Chronic pain is a well-established and cardinal manifestation of Hypermobility
> EDS and it is common for pain to be out of proportion to physical and
> radiological findings.  The origin of the pain is not clearly understood, but some
> of the likely causes include muscle spasm (tender points are sometimes present)
> and degenerative arthritis; neuropathic pain is also common.

*See* http://ednf.org/hypermobility-type.  The EDNF website further quotes a study of EDS

---

[5] Subluxation is the incomplete or partial dislocation of a bone or joint.  *See*
http://medical-dictionary.thefreedictionary.com/subluxation.

patients, which states that "[o]ur findings suggest that pain is a very common and severe symptom in this group [*i.e.*, those with hypermobility]" of EDS patients and "is related to dislocations, sleep disturbances and moderate-to-severe impairment in daily functioning." *Id*.

Under the Social Security Administration's rule as stated in 20 C.F.R. § 404.1529(c)(2), it "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." But this is exactly what the ALJ did when she noted Plaintiff's consistent complaints of pain in her summary of Plaintiff's medical history but failed to accord them any credence without discussing or requesting additional information on the potential impact of EDS on Plaintiff's experience of pain. *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000) (even if claimant's complaint is not fully supported by objective medical evidence, the ALJ must nonetheless "investigate *all avenues presented that relate to pain*, including claimant's prior work record information and observations by treating physicians, examining physicians, and third parties") (emphasis added). The government justifies the ALJ's determination that Plaintiff's complaints of pain were "questionable" because she only took over the counter pain medication. While the ALJ mentioned this fact in her summary of Plaintiff's medical history (*id*. 32), she does not reference it when discussing her determination regarding Plaintiff's credibility and the Court "confines its review to the reasons supplied by the ALJ," not the government. *Steele v. Barnhart*, 280 F.3d 936, 941 (7th Cir. 2002). The Court concludes that "the ALJ inappropriately rested h[er] credibility determination too heavily on the absence of objective support for [Plaintiff's] complaints without digging more deeply." *Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir.

2014).

The Court also finds the ALJ's decision to not accord any significant weight to Dr. Susan

Fedinec, Plaintiff's primary treating physician, to be unsupported.  Dr. Fedinec made specific

reference to EDS and concluded in a statement dated January 17, 2012 that Plaintiff was

disabled, but the ALJ noted that it is the Commissioner who determines whether a claimant is

disabled, not treating medical sources.  (AR 37.)  The ALJ went on to state that Dr. Fedinec's

opinion that EDS could have future consequences on Plaintiff's heart, gastrointestinal function,

dental health, neurological state and musculoskeletal system was "just speculation as there are no

objective problems of any of the noted problems."  (*Id*. 38.)  But the record is replete with

evidence regarding current pain, injury and weakness to Plaintiff's musculoskeletal system.

Moreover, the ALJ conclusorily states that "the doctor's opinion is without substantial support

and contrasts sharply with the other evidence of record," (*id*.) without identifying the purported

contradictions.  Further, the ALJ's statement that "the possibility exists" that Dr. Fedinec's

opinion is only based on sympathy with Plaintiff rather than medical evidence, observation or

treatment is completely speculative.  While the ALJ again makes reference to Dr. Fedinec's

opinion "depart[ing] substantially from the rest of the evidence of record," the ALJ fails to point

to record evidence supporting this statement.  An ALJ shall "always give good reasons . . . for

the weight given to a treating physician's opinion," 20 C.F.R. § 416.927(d)(2), and if the ALJ

chooses to reject a treating physician's opinion, she "must provide a sound explanation for that

rejection." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011).  The ALJ failed to do so here.

The Court is furthered bothered by the ALJ's conclusion that Plaintiff "has no

limitation[s]" with respect to engaging in the activities of daily living, as the conclusion is not

wholly supported by the record.  (*Id*. 29.)  The ALJ noted that activities of daily living include

"cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence,

caring appropriately for grooming and hygiene, using telephones and directories, and using a

post office."  (*Id*. 29.)  But the ALJ also stated in her decision that Plaintiff testified that she laid

on the couch for 80% of the day, could not lift her infant son or a gallon of milk, could not cook,

shop or perform household chores, the neighbor helped her take out the trash and put the baby's

car seat in the car and that when her husband lived with her, he "did everything." (*Id*. 31.)  The

minimal activities Plaintiff engaged in (including driving, socializing with neighbors and family,

watching TV, and e-mailing and texting) do not support a finding that she is necessarily able to

work five days a week for eight hours a day.  *Carradine v. Barnhart*, 360 F.3d 751, 755–57 (7th

Cir. 2004) (stating that simply because claimant can drive, shop and do housework when she

occasionally feels better, "[i]t does not follow that she can maintain concentration and effort over

the full course of the work week.").

"An erroneous credibility finding requires remand unless the claimant's testimony is

incredible on its face or the ALJ explains that the decision did not depend on the credibility

finding."  *Pierce*, 739 F.3d at 1051.  Neither is true here.  On remand, Plaintiff's concerns about

the determination of her residual functional capacity and the weight given to the opinions of her

naprapath and chiropractor should be addressed after the ALJ properly considers all of the

evidence regarding Plaintiff's complaints of pain.

### III.    Conclusion

For the reasons stated above, Plaintiff's motion for summary judgment [11] is granted

and the government's motion [16] is denied.  The case is remanded to the Social Security

Administration for further proceedings consistent with this order.


December 2, 2014                              _____
                                             **Ronald A. Guzmán**
                                             **United States District Judge**